UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

| Present: The Honorable | BEVERLY REID O'CONNELL, United States District Judge | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**     (IN CHAMBERS)

**ORDER DISCHARGING OSC [24], DENYING PLAINTIFF'S MOTION TO REMAND [16], AND DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS [11]**

## I.     INTRODUCTION

Pending before the Court are: (1) Plaintiff Aristides Francisco's ("Plaintiff" or "Francisco") Motion to Remand, (Dkt. No. 16 (hereinafter, "Motion" or "Mot.")); (2) Plaintiff's Response to the Court's Order to Show Cause, (Dkt. No. 24); and, (3) Defendants Emeritus Corporation and Brookdale Senior Living Communities, Inc.'s ("Defendants") Motion to Dismiss, (Dkt. No. 11 ("MTD")).  After consideration of the papers filed in support of and in opposition to the instant Motion, the Court deems these matters appropriate for decision without oral argument of counsel.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the following reasons, the Court **DISCHARGES** its Order to Show Cause, **DENIES** Plaintiff's Motion to Remand, and **DENIES as moot** Defendants' Motion to Dismiss.

## II.     BACKGROUND

### A.     Factual Background

Plaintiff, a California resident, worked for Defendant Emeritus Corporation ("Emeritus"), in a non-exempt, hourly-paid position until the termination of his employment on September 29, 2013.  (Dkt. No. 1-2 ("Compl.") ¶ 9; Dkt. No. 1

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

("Removal") ¶ 12.) On July 31, 2014, Defendant Brookdale Senior Living Communities, Inc. ("Brookdale"), acquired Emeritus. Emeritus and Brookdale (collectively, "Defendants") are not citizens of California. (Removal ¶¶ 20–21.)

Plaintiff claims that "Defendants uniformly administered a corporate policy, practice and/or procedure of (1) failing to pay all meal period wages and rest break wages; (2) failing to pay all minimum and overtime wages; (3) failing to provide accurate wage statements; (4) to pay all wages due and owing upon termination of employment; and, (5) engaging in unfair business practices." (Compl. ¶ 18.)

According to Plaintiff, Defendants have subjected other employees to the same "systematic illegal practices." (Compl. ¶ 2.) Consequently, Plaintiff filed the instant class action seeking to represent "[a]ll current and former non-exempt employees of Defendants who worked in California at any time from March 16, 2013, to the present." (Compl. ¶ 15(a)–(f).)

### B.    Procedural History

On March 16, 2017, Plaintiff filed his Complaint in the Superior Court of California, County of Los Angeles. (Dkt. No. 1-1.) Plaintiff's Complaint alleges five causes of action: (1) violation of California Labor Code sections 226.7 and 512; (2) violation of California Labor Code sections 510 and 1194; (3) violation of California Labor Code section 226; (4) violation of California Labor Code section 203; and, (5) violation of California Business and Professions Code section 17200 *et seq.* (Compl. ¶¶ 28–49.)

On April 14, 2017, Defendants filed their Notice of Removal, alleging this Court's jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"). (*See* Removal.) Defendants provided two declarations in support of their motion to remove: Declaration of Brenda O'Keefe, the Lead Business Systems Analyst for Brookdale Employee Services (Dkt. No. 1-5 (hereinafter, "O'Keefe Decl.")), and Declaration of Liberty Stansberry, Brookdale's Senior Vice President of Human Resources, (Dkt. No. 1-4 (hereinafter, "Stansberry Decl.")). On April 21, 2017, Defendants filed their Motion to Dismiss or, in the Alternative, a Motion for a More Definite Statement. (Dkt. No. 11.) On May 12, 2017, Plaintiff filed the instant Motion.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

(*See* Mot.) On May 22, 2017, Defendants opposed Plaintiff's Motion. (Dkt. No. 17 (hereinafter, "Opp'n").) On May 26, 2017, Plaintiff replied in support of his Motion to Remand. (Dkt. No. 18 ("Reply").) Then, on June 1, 2017, Plaintiff filed a document entitled "First Amended Complaint." (Dkt. No. 19.) On June 7, 2017, the Court ordered Plaintiff to show cause as to why (1) the proposed amended complaint was filed without a concurrent motion for leave to amend, and, (2) the proposed amended complaint should not be stricken from the docket. (Dkt. No. 21 ("OSC").) On June 7, 2017, Plaintiff moved ex parte to continue the class certification filing deadline imposed under Local Rule 23-3. (Dkt. No. 22.) On June 9, 2017, Plaintiff responded to the Court's OSC, attaching a stipulation of the parties for amendment of the Complaint. (*See* Dkt. No. 24.)

## III.  LEGAL STANDARD

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of a claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93–102 (1998)). Whether a defendant may rightfully remove a case from a state court to a federal district court is entirely governed by statutory authorization from Congress. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). Under 28 U.S.C. § 1441, a civil action may be removed to the district court only if that court has original jurisdiction over the issues alleged in the state court action. *See* 28 U.S.C. § 1332(d). Original jurisdiction may be established pursuant to CAFA. *Id.* Under CAFA, a federal district court has jurisdiction over a civil class action in which the class has minimum diversity and more than 100 members, and in which the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2).

Remand may be ordered for lack of subject matter jurisdiction or any defect in the removal procedure. 28 U.S.C. § 1447(c). Upon a plaintiff's motion to remand, a defendant bears the burden of establishing proper removal and federal jurisdiction. *Gaus v. Miles Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Federal jurisdiction must be rejected if there is any doubt as to the right of removal. *Id.* Where there is a doubt regarding the right to removal, "a case should be remanded to state court." *Matheson v. Progressive Specialty Ins.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (citing *Gaus*, 980 F.2d at 566).

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

A different standard applies for claims arising under CAFA, however, "which Congress enacted to facilitate the adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *accord Jordan v. Nationstar Mortg.*, 781 F.3d 1178, 1182–83 (9th Cir. 2015); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Instead, "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart*, 135 S. Ct. at 554 (quoting S. Rep. No. 109–14, at 43).

To meet the amount in controversy requirement under CAFA, a removing defendant must plausibly assert that the amount in controversy exceeds $5,000,000. *See Ibarra*, 775 F.3d at 1197. This requires a "short and plain statement" of the grounds for removal. 28 U.S.C. 1446; *Dart*, 135 S. Ct. at 553–54. This language tracks that of Federal Rule of Civil Procedure 8(a), and courts have been instructed to apply this same liberal pleading standard in cases of removal involving CAFA. *See Dart*, 135 S. Ct. at 553. "The 'short and plain statement' language from § 1446(a) applies to the entire notice of removal, and therefore would apply equally to all CAFA allegations and not just the amount-in-controversy requirement." *Roa v. TS Staffing Servs., Inc.*, No. 2:14-cv-08424-ODW (MRW), 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015).

Where the amount in controversy is not contested, a defendant is not required to submit evidence establishing the amount, and the amount pleaded by the defendant should be generally accepted if made in good faith. *Dart*, 135. S. Ct. at 553. Where "the plaintiff contests, or the court questions, the defendant's allegation" in its notice of removal, however, further evidence establishing that the amount in controversy meets the jurisdictional threshold is required. *Id.* at 554. Thus, in considering Plaintiff's motion to remand, the Court must determine, "by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

## IV. DISCUSSION

Plaintiff seeks to have the instant case remanded to state court. Plaintiff claims that Defendants have failed to meet their burden to prove jurisdiction under § 1332(d), and therefore, removal was improper. (Mot. at 1–2.) For the following reasons, the Court finds that removal was proper and remand is inappropriate.

### A. Plaintiff's Amended Complaint

Plaintiff filed his response to the Court's OSC, attaching a stipulation of the parties for amendment of the Complaint. The Court deems Plaintiff's response to be satisfactory, and accordingly **DISCHARGES** its OSC. With respect to the Motion to Remand, the Court must address which pleading properly underlies its analysis of jurisdiction. As a general rule, the Court determines removability of a compliant at the time of removal. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000). However, for purposes of evaluating CAFA jurisdiction, the Ninth Circuit has explained that, in limited circumstances, district courts may consider amended pleadings filed after removal for purposes of ascertaining jurisdiction. *See Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015). Importantly, however, in *Broadway Grill, Inc. v. Visa Inc.*, the Ninth Circuit clarified that its holding in *Benko* is to be construed very narrowly. *See Broadway Grill, Inc. v. Visa, Inc.*, No. 17-15499, 2017 WL 2174549, at *1 (9th Cir. May 18, 2017).

The Ninth Circuit explained that the need for amendment in *Benko* arose from pleading deficiencies that resulted from the fact that the "local controversy" exception to CAFA jurisdiction was "highly unlikely to be addressed in a state court complaint, justif[ying] allowing amendments." *Id.* at *1. By contrast, the Circuit explained, "[a] class definition . . . will always be present in any class action complaint, state or federal. The amendment in this case did not merely provide relevant information. It changed the nature of the action." *Id.* For that reason, the Ninth Circuit concluded that, "*Benko* did not . . . strike a new path to permit plaintiffs to amend their class definition, add or remove defendants, or add or remove claims in such a way that would alter the essential jurisdictional analysis." *Id.* at *4.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

For purposes of Plaintiff's Motion to Remand, the Court considers the Complaint, which was the operative pleadings at the time of removal. Plaintiff's amendment alters the class definition to plead a narrower class. (*See* FAC ¶ 15.) Plaintiff also omits his waiting time and recordkeeping claims. (*Compare* Compl. at 9–11 *with* FAC.) And lastly, Plaintiff states his prayer for damages in less precise terms, omitting his prayer for waiting time and recordkeeping damages. (*Compare* Compl. at 12 *with* FAC at 11.) The Court concludes that Plaintiff's FAC "amend[s] the class definition," and "add[s] or remove[s] claims in such a way that would alter the essential jurisdictional analysis." *See Broadway Grill*, 2017 WL 2174549, at *4. Class definition as well as damages are commonly pleaded in both state and federal complaints. Thus, Plaintiff's amendment does not fall within the "very narrow" exception created in *Benko* and *Broadway Grill*. Accordingly, although the Court accepts the FAC as filed, the Court will nonetheless evaluate the merits of Plaintiff's Motion based upon the operative pleading at the time of removal, namely the original Complaint.

### B.     Numerosity and Minimal Diversity

The parties do not dispute the numerosity or minimum diversity elements; only the amount in controversy element is at issue. (*Compare* Removal ¶ 8–22 *with* Mot. at 4 ("[T]he number of persons whose employment terminated during the class period prior to Emeritus's acquisition is approximately 2,852.").) For the following reasons, the Court agrees and finds, by a preponderance of the evidence, that the minimal diversity and numerosity requirements are met.

A natural person's state citizenship is determined by his state of domicile, not his state of residence. A person's domicile is his permanent home, where he resides with the intention to remain or to which he intends to return. *See Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986). A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state. *See, e.g., Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957). "The intention to remain may be established by factors such as: current residence; voting registration and practices; location of personal and real property; location of brokerage and bank accounts; location of spouse and family; membership in unions and other organizations; place of employment or business; driver's license and automobile registration; and payment of taxes." *Kyung Park v. Holder*, 572 F.3d 619, 624–25 (9th Cir. 2009) (citing *Lew*, 797 F.2d at 750).

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

Plaintiff alleges that he is an individual residing in the County of Los Angeles, California and that Defendants formerly employed him in a non-exempt, hourly-paid position. (*See* Removal ¶ 17; Compl. ¶ 9.) Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California. No allegation, argument, or evidence before the Court suggests that Plaintiff's domicile is outside of California. Therefore, the Court holds that Plaintiff's California citizenship is established by a preponderance of the evidence.

A corporation is a citizen of any state in which the corporation is incorporated, and the one state in which it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is the state in which the corporation maintains its headquarters; the nerve center from which the corporation is actually directed, controlled, and coordinated. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). Thus, Defendant Emeritus is a citizen of Washington and Tennessee. (*See* Removal ¶ 20.) Defendant Brookdale is a citizen of Delaware and Tennessee. (*See id.* ¶ 21.) Based upon the foregoing, the Court rules that, by a preponderance of the evidence, the numerosity and minimal diversity elements are met for jurisdictional purposes.

### C. Amount in Controversy

Before Defendants removed the Action to federal court, Plaintiff's Complaint alleged only monetary damages that "exceed the minimal jurisdictional limits of the Superior Court." (Compl. ¶ 4.) In the Removal, Defendants estimate that the amount in controversy is $8,863,974, not including attorneys' fees. (Removal ¶ 37.) In the instant Motion, Plaintiff argues that Defendants' calculation of the amount in controversy is exaggerated because Defendants improperly aggregated persons for whom Plaintiff cannot recover damages as a matter of law. (Mot. at 2–4.) Plaintiff also claims that Defendants' calculation of the amount in controversy is impermissibly speculative because Defendants do not provide sufficient evidence to support Defendants' assumed number of missed meal, rest period, and overtime violations. (Mot. at 5–7.) And in his Reply, Plaintiff argues that his Complaint alleges a "pattern and practice" as opposed to "uniform" violations, and thus, "Defendants must rely on extrapolations from admissible statistical evidence[]" to support the amount in controversy calculations. (Reply at 5–6.) The Court finds that Defendants have established, by a preponderance of the evidence,

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

that the amount in controversy exceeds $5 million through reliance upon a reasonable assumption of a weekly violation rate. The Court discusses its reasoning below.

### 1. Defendant's Proposed Violation Rate

Plaintiff argues that:

> Where a plaintiff's complaint specifically alleges a "uniform" practice, the defendant may rely on an assumed violation rate provided the Plaintiff does not produce any evidence to the contrary. In such cases, the defendant is not required to provide extensive business documents to prove the amount in controversy.

(Reply at 5 (citing *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1189 (E.D. Cal. 2016); *Dart*, 135 S. Ct. at 554; *Ibarra*, 775 F.3d at 1199).) But according to Plaintiff, "when a complaint alleges a 'pattern and practice' of violations, the Ninth Circuit has found that a defendant's assumption must be based upon extrapolations from statistical evidence." (Reply at 5 (citing *Dobbs*, 201 F. Supp. 3d at 1189).)

The Court does not disagree directly with the position Plaintiff advances. However, the Court finds that Plaintiff's reliance on *Dobbs* (and related cases) is misplaced. In *Dobbs*, the defendant relied upon an assumption of a 100% violation rate in calculating the amount in controversy. *See Dobbs*, 201 F. Supp. 3d at 1189 ("Based on this paucity of evidence, the Court finds Defendants' assumption of a 100 percent violation rate unreasonable. Because Defendants rely on this unreasonable assumption to make its amount-in-controversy calculation, the Court finds Defendants' assertion that the figure exceeds $5 million to be merely speculative." (citation omitted)).

In the instant case, Defendants do not rely upon an assumption of a 100% violation rate in calculating the amount in controversy. (*See* Removal ¶¶ 29, 32; Opp'n at 13, 14.) Rather, Defendants assume a violation rate of one violation per week. (*See id.*) Moreover, the Court does not consider the Defendants' calculation in isolation; rather, the Court considers the Defendants' calculation in light of the Plaintiff's Complaint. *See Ibarra*, 775 F.3d at 1198–99. Although Plaintiff alleges that Defendants engaged in a pattern and practice of wage-and-hour violations, Plaintiff also broadly alleges other facts

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

that indicate a higher frequency of violations. Plaintiff's Complaint includes allegations that:

> Defendants *uniformly administered a corporate policy, practice and/or procedure* of (1) failing to pay *all* meal period wages and rest break wages, (2) failing to pay *all* minimum and overtime wages, (3) failing to provide accurate wage statements, (4) failing to pay *all* wages due and owing upon termination of employment, and (5) engaging in unfair business practices.

(Compl. ¶ 18 (emphasis added); *see also* Compl. ¶¶ 2 ("systematic"), 19 ("regularly"), 24 ("pattern, practice and uniform administration of corporate policy").)

Plaintiff's attempt to discredit Defendants' reliance upon the phrase "uniform administration of corporate policy" by explaining that "this allegation identifies a uniform administration of corporate policy, not a uniform practice[]" is unpersuasive. Neither a "uniform administration of corporate policy" nor a "uniform pattern or practice" *necessarily* give rise to uniform violations.

In light of the facts that, (1) Defendants do not assume a 100% violation rate, (2) Plaintiff's pleadings contain allegations of *uniform*, *systemic*, and otherwise wide-ranging policy, practice, and pattern, (3) Plaintiff's allegations do not allege a more precise calculation of violation frequency, and, (4) Plaintiff fails to offer any other evidence of the frequency with which the alleged violations occurred, the Court finds Defendants' reliance upon an assumption of a weekly violation rate to be reasonable under the circumstances. *See Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) ("In this case, plaintiff does not allege that class members were 'never' permitted breaks, but plaintiff does allege that he 'regularly' missed meal breaks and that defendants maintained a 'policy or practice' of both meal and rest break violations. Brinderson's assumption of one violation per week is reasonable based on the allegations of the SAC." (internal citations omitted)); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ("[Defendants' assumed rates of

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

violation] are sufficiently supported by [plaintiff]'s allegations and [d]efendants' evidence . . . . [A] removing defendant is not required to go so far as to prove [p]laintiff's case for him by proving the actual rates of violation . . . . Notably, [p]laintiff fails to assert any different rate of violation or to submit any evidence indicating a contrary rate of violation.") (citations omitted).

### 2. Meal Periods and Rest Breaks

Plaintiff alleges that Defendants, as "a pattern and practice," failed to provide Plaintiff and the putative class members with legally-compliant meal periods and rest breaks. (Compl. ¶ 29.) Plaintiff does not specify the frequency of the alleged meal and rest period violations. (Removal ¶ 31.) In compliance with California Labor Code Section 226.7, 512, and Industrial Wage Commission ("IWC") Wage Order, Plaintiff seeks compensation for allegedly unpaid meal and/or rest break periods. (Compl. ¶ 31.) Claims that an employer failed to provide adequate meal or rest periods are subject to a three-year statute of limitations period. (*See* Cal. Code. Civ. Proc. § 338.) Accordingly, Defendants limit the damages associated with this cause of action from March 16, 2014 to July 31, 2014. (Removal ¶ 32.) Defendants estimate that members of the putative class worked approximately 89,086 weeks during this period. (*See* O'Keefe Decl.) The number of weeks (89,086) multiplied by the putative class average hourly rate ($11.12) totals $990,636.32. (Removal ¶ 32.) To account for both meal period and rest violations, Defendants doubled $990,636.32 to reach a total amount of $1,981,272.62. (Removal ¶ 32.)

Defendants estimate the penalties based on historical employment information and limit the penalties by the requisite statute of limitations. (*See* O'Keefe Decl.) As explained above, because Plaintiff claims that the violations occurred regularly, as a pattern and practice, the Court finds Defendants' estimation of one violation per work week reasonable and conservative. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648–49 (9th Cir. 2012) (reasoning that when a complaint alleges routine and regular violations, defendant is reasonable to assume a rate of one violation per week); *see also Garza*, 178 F. Supp. 3d at 911–12 (holding a weekly-violation-rate calculation reasonable when complaint alleges defendants maintained a "policy or practice" of both meal and rest break violations).

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

### 3. Unpaid Minimum Wages and Overtime

Plaintiff claims that Defendants' "regular[]" overtime and minimum wage violations constitute a "pattern and practice." (Compl. ¶ 34.) Based on the Complaint's limited information, Defendants estimate that each employee of the putative class worked one hour of overtime a week. (Removal ¶ 29.) The putative class worked approximately 282,232 weeks from May 2013 to July 31, 2014. (O'Keefe Decl. ¶ 3.) The average hourly rate for the putative class is $11.12. (O'Keefe Decl. ¶ 4.) Overtime pay is calculated by multiplying $11.12 by one and one-half. (*See* Cal. IWO 5-2001, § 3(A)(1).) Defendants calculated Plaintiff's minimum wage and overtime claim by multiplying the overtime pay rate for one hour ($16.80) by the number of weeks the putative class worked during the relevant time period (282,232). (Removal ¶ 29.) Consequently, Defendants estimate the amount of controversy for the second cause of action to be $4,707,629. (Removal ¶ 30.)

Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable. *Campbell*, 471 F. App'x at 648–49; *see also Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500, 2012 WL 699465, at *5–6 (N.D. Cal. Mar. 1, 2012) (examining how the complaint informs what is a reasonable amount-in-controversy calculation and holding that a "policy" of violations permits a defendant to assume one violation per week.).

### 4. Waiting Time Penalties

Plaintiff next claims that Defendants willfully failed to pay Plaintiff and the putative class members their wages, earned and unpaid, at the time of termination or within 72 hours or resignation. (Compl. ¶ 40–43.) Defendants assume based on the pleadings that Plaintiff seeks a penalty of continued wages for the maximum of thirty days. (Removal ¶ 35; *see* Compl. ¶ 43 ("Defendants' willful failure to provide Plaintiff and the Class and Subclasses the wages due and owing them upon separation from employment results in a continuation of wages up to thirty (30) days from the time the wages were due.").) Because the statute of limitations for wage actions is three years, Defendants limit exposure for this claim from March 16, 2014 to July 31, 2014. (*See* Cal. Code. Civ. Proc. § 338; Removal ¶ 35.) Approximately 815 employees ceased working

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

for Emeritus during this time period. (Removal ¶ 35.) A full working day consists of eight hours and the average hourly rate for the putative class is $11.12; thus, the average daily rate for the putative class is $88.96. (Removal ¶ 35.) To determine the amount in controversy for the final-wages-not-timely-paid claim, Defendants multiplied the number of employees who ceased working for Emeritus during the relevant time period (815) by the putative class' average daily rate ($88.96) by thirty days. (Removal ¶ 35.) Accordingly, Defendants estimate the sum of damages for this claim to be $2,175,072.

### 5. The Existence of Substantive Defenses Does Not Impact the Court's Evaluation of Amount in Controversy

Plaintiff argues in his Reply that "[o]nly once the removing party makes [a plausible showing that the amount in controversy exceeds $5 million] does the court proceed to . . . consideration of the Plaintiff's contrary evidence." (Reply at 4 (citing *Garcia v. Lifetime Brands, Inc.*, EDCV-15-1924, 2016 WL 81473, at *4 (C.D. Cal. Jan. 7, 2016)).) Here, the Court finds that Defendants have plausibly alleged that the amount in controversy exceeds $5 million. The Court next considers Plaintiff's countervailing evidence.

On July 31, 2014, Brookdale acquired Emeritus, and shortly thereafter required employees to execute arbitration agreements. (Stansberry Decl.; Mot. at 2.) Given that Plaintiff worked as non-exempt hourly employee with Emeritus until September 29, 2013, it follows that Plaintiff was never employed by Brookdale. (*See* Removal ¶ 12.) Plaintiff seeks to represent "[a]ll current and former non-exempt employees of Defendants who worked in California at any time from March 16, 2013, to the present." (Compl. ¶ 15.) However, Defendants limit the class period from May 11, 2013 to July 31, 2014 (the day Brookdale acquired Emeritus), because a prior class action encompassing Plaintiff's proposed class definition settled on May 10, 2013. (Removal ¶ 13.) Based on this relevant time period, Defendants estimate that the putative class consists of approximately 6,800 employees. (Removal ¶ 13.)

Plaintiff claims that 6,800 employees is an exaggerated number because Brookdale required employees to sign arbitration agreements that preclude class action claims. (*See* Mot., Ex. A.) On that basis, Plaintiff alleges that those employees bound by arbitration agreements cannot be included in calculating the amount in controversy. (Mot. at 2–4.)

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

According to Plaintiff, the only persons not subject to the arbitration agreement are "the non-exempt, hourly employees in California whose employment with Emeritus ceased prior to the time it was acquired by Brookdale." (Mot. at 2.) Defendants indicate that between March 2014 and July 2014 (a span of roughly four months), 815 employees ceased working with Emeritus. (*See* O'Keefe Decl. ¶ 5.) Plaintiff, applying the same rate of termination during the fourteen-month period in question, extrapolates that 2,852 employees likely ended their employment with Emeritus between May 2013 and July 2014. (*Id.*) Two thousand, eight hundred and fifty-two employees equal 42% of the putative class estimated by Defendants. (*Id.*) Consequently, Plaintiff urges the Court to discount Defendants' amount in controversy by 58%, and asserts that the amount in controversy, not including attorneys' fees, is $3,722,870. (*Id.*)

Plaintiff argues that the Court can consider the arbitration agreement in determining the amount in controversy because the Court is not confined to the face of the Complaint but can also consider notice of removal, as well as, summary-judgment-type evidence. (Removal at 4–5.) Defendants respond that it is improper for the Court to consider the arbitration agreement because the amount in controversy is determined from the pleadings as they exist at the time a petition for removal is filed. (Opp'n at 3–5.) Moreover, Defendants argue that the Court cannot include affirmative defenses when determining the amount in controversy. (Opp'n at 5–8.) Where a plaintiff contests subject matter jurisdiction, courts consider "summary-judgment-type evidence relevant to the circumstances at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *see also Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569–70 (2004) (reasoning that jurisdiction "is to be determined with reference to the facts as they existed at the time of filing."). Given that Brookdale's Dispute Resolution Agreement was allegedly instituted on December 30, 2014, the Court can consider the arbitration agreement. (*See* Mot., Ex. A.)

Nonetheless, evidence of one arbitration agreement does not necessarily defeat jurisdiction, especially when the scope and applicability of the arbitration agreement remains in question.[1] *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (reasoning that the fact that a complaint discloses the existence of a valid

---

[1] Moreover, evidence of a single employee's arbitration agreement does not support Plaintiff's claim that 58% of the putative class is bound by that arbitration agreement.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

defense to that claim does not necessarily oust jurisdiction); *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 664 (9th Cir. 2005) (holding that the amount in controversy is not bound by a zero dollar arbitration award, but rather is the amount sought to recover); *Murphy v. Am. Gen. Life Ins. Co.*, No. ED CV14-00486 JAK SP, 2014 WL 3417606, at *3 (C.D. Cal. July 1, 2014) ("The amount in controversy is measured by [p]laintiff's claims, not [d]efendant's defenses."). The Court does not reach merits of Defendants' potential defenses without first determining jurisdiction. Accordingly, the Court need not determine the scope and applicability of any arbitration agreements at this time.[2] For that reason, the Court's evaluation of the amount in controversy remains unaffected by Plaintiff's claim that some class members are bound by arbitration agreements. And in the operative Complaint, Plaintiff's class is defined as "all current and former non-exempt employees of Defendants who worked in California at any time from March 16, 2013, to the present," which does not exclude employees who signed arbitration agreements. (*See* Compl. ¶ 15.)

Moreover, even assuming the existence of valid arbitration agreements to determine the class size, the amount in controversy would more than likely still meet the jurisdictional minimum. Plaintiff urges the Court to discount Defendants' total amount in controversy estimation by 58%. (*See* Mot. at 7–8.) However, Plaintiff's 58% discount is not properly applied to the waiting time damages.[3] This is because Defendants applied the waiting time penalties only to employees who ceased employment with Emeritus prior to July 31, 2014, and therefore those employees could not have signed arbitration agreements. (*See* Removal ¶¶ 11, 35; Stansberry Decl.; Mot. at 2.) Therefore, even adopting Plaintiff's discounted calculations, Plaintiff's asserted amount in controversy reaches $4,984,411,[4] not including attorneys' fees.

---

[2] Plaintiff repeatedly alleges that the amount in controversy does not include amounts he cannot recover as a matter of law. (*See, e.g.*, Mot. at 3.) With respect to the existence of arbitration agreements, the Court finds that the existence, scope, and applicability of such agreements are not established as a matter of law at this time.

[3] The waiting time penalties refer to Plaintiff's fourth cause of action.

[4] $1,977,204.50 (42% of Defendants' unpaid overtime damages estimation) + $416,067.25 (42% of Defendants' meal period premiums damages estimation) + 416,067.25 (42% of Defendants' rest break

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

### 6. Attorneys' Fees

Plaintiff asserts that "Defendants' reference to attorneys' fees is improper to the extent that they include projected fees that have not yet been incurred." (Mot. at 7.) Here, Plaintiff seeks attorneys' fees under California Labor Code sections 218.6, 226, 1194, and 1021.5. (Compl. at 12.) "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Twenty-five percent recovery is the "benchmark" level for reasonable attorneys' fees in class action cases. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). However, courts in this Circuit disagree as to whether the amount of attorneys' fees considered in a motion to remand should be only those incurred at the time of removal, *see Fortescue v. Ecolab Inc.*, No. CV 14-0253 FMO (RZx), 2014 WL 296755, at *3 (C.D. Cal. Jan. 28, 2014), or whether the amount should include a forecast for the reasonable attorneys' fees incurred through trial, *see Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034–35 (N.D. Cal. 2002).[5]

---

premiums damages estimation) + $2,175,072 (100% of Defendants' waiting time penalties estimation) = $4,984,411.

[5] "[C]ourts in the Ninth Circuit are split as to whether a court should consider only attorneys' fees incurred as of the time of removal or fees reasonably likely to be incurred after the date of removal." *Bigby v. DS Waters of Am. Inc.*, No. CV 12-01362 MMM CWX, 2013 WL 394876, at *7 (C.D. Cal. Jan. 30, 2013); *see also Barbosa v. Transp. Drivers, Inc.*, No. ED-CV-15-1834-DMG-DTBX, 2015 WL 9272828, at *4 (C.D. Cal. Dec. 18, 2015) ("district courts in the Ninth Circuit 'are split as to whether a court should consider only attorneys' fees incurred as of the time of removal or fees reasonably likely to be incurred after the date of removal.'"); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, n.4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys fees likely to be incurred cannot be estimated at the time of removal"); *Faulkner v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198, at *4 (N.D. Cal. Oct. 4, 1999) ("When estimating attorney's fees for the purposes of establishing jurisdiction, the only fees that can be considered are those incurred as of the date of removal . . . ."). The Court need not resolve this issue conclusively at this time, because Defendants' calculation of the amount in controversy based upon unpaid meal and rest breaks, waiting time penalties, and minimum/overtime wages suffices to establish by a preponderance of the evidence that the amount in controversy requirement is met in this Action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

In sum, Defendants estimate that the amount in controversy for unpaid (1) overtime is $4,707,629.76; (2) meal period premiums is $990,636.32; (3) rest period premiums is $990,636.32; and, (4) waiting time penalties is $2,175,072. (Removal ¶ 37.) Thus, Defendants estimate that the total amount in controversy is $8,863,974, not including attorneys' fees. (Removal ¶ 37.) Even assuming Plaintiff's 58% discount, the amount in controversy still reasonably reaches just shy of $5,000,000, excluding attorneys' fees. Although courts in this Circuit are split regarding whether to factor attorneys' fees as of the date of removal, or calculated over the reasonable duration of the action, the Court finds that, by a preponderance of the evidence, Plaintiff has incurred at least *some* attorney's fees as of the time of removal, which, more likely than not, exceeds the jurisdictional minimum for the amount in controversy.

Based upon (1) Defendants' reliance on a reasonable assumption of a weekly violation rate, (2) Defendants' offered evidence regarding the putative class's workweeks, number of employees, and average pay, (3) Plaintiff's broad allegations, including allegations of uniform policy and practice, and (4) Plaintiff's failure to offer any evidence (beyond one arbitration agreement) in contravention of the foregoing information, the Court rules that Defendants have met their burden of establishing the Court's jurisdiction over this Action by a preponderance of the evidence.

### D. Defendants' Motion to Dismiss

The Ninth Circuit has explained that, "[a]s a general rule, when a plaintiff files an amended complaint, the amended complaint supercedes the original, the latter being treated thereafter as non-existent." *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014) (*quoting Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (internal quotation marks and citations omitted)); *see also Petrus v. NY Life Ins. Co.*, 2015 WL 3796221, *1 (S.D. Cal. June 18, 2015) ("As the FAC superseded the initial Complaint, those motions to dismiss the initial Complaint are TERMINATED as MOOT."). In light of the parties'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-02871-BRO (SSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | ARISTIDES FRANCISCO V. EMERITUS CORPORATION ET AL. | | |

LINK:

stipulation to Plaintiff's filing of the First Amended Complaint, Defendants' Motion to Dismiss is **DENIED as moot**.

## V.     CONCLUSION

For the foregoing reasons, (1) the Court **DENIES** Plaintiff's Motion to Remand, (2) **DISCHARGES** its OSC; and, (3) **DENIES as moot** Defendants' Motion to Dismiss. The hearing on Defendant's Motion to Dismiss set for June 26, 2017 is hereby **VACATED**.

**IT IS SO ORDERED.**

| | : |
|---|---|
| Initials of Preparer | rf |