**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JS-6



Aristedes Francisco,

        Plaintiff,

        v.

Emeritus Corp., et al.,

        Defendant.

2:17-cv-02871-VAP-SSx

**Order GRANTING Motion for Final Approval of Class Action Settlement (Doc. No. 95) and Order GRANTING IN PART and DENYING IN PART Motion for Motion for Attorney Fees and Costs, Class Representative's Enhancement Payment, and Settlement Administration Costs (Doc. No. 91).**

Before the Court are Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. No. 95, the "Settlement Motion") and Plaintiff's Motion for Attorney Fees and Costs, Class Representative's Enhancement Payment, and Settlement Administration Costs (Doc. No. 91, the "Fees Motion"). After considering the papers filed in support of the motions, the Court GRANTS the Settlement Motion and GRANTS IN PART and DENIES IN PART the Fees Motion.

## I. BACKGROUND

The parties are familiar with the background of this dispute, and the Court detailed the facts in its Order granting the Amended Motion for

United States District Court
Central District of California

United States District Court
Central District of California

Preliminary Approval of Class Action Settlement.  (Doc. No. 90.)  In short, Plaintiff filed a class action complaint against Defendants Emeritus Corporation ("Emeritus") and Brookdale Senior Living Communities ("Brookdale" and, together with Emeritus, "Defendants"), alleging failure to pay all overtime and minimum wages.  The class, as defined in the settlement agreement, would include "all current and former non-exempt employees of Defendants who worked for Emeritus Corporation in California at any time from May 11, 2013 to the present, excluding those who transitioned to any Brookdale entity." (Doc. No. 88, 17)

Discovery in this case included interrogatories, document production, and the deposition of Plaintiff.  (Doc. No. 88-1, ¶ 9.)  The parties attended a day-long mediation with mediator David A. Lowe on June 28, 2018, and although the case did not settle then, the parties continued discussions and ultimately arrived at an informal compromise that forms the basis for the settlement now presented to the Court (the "Settlement Agreement").  (*Id.* at ¶ 12.)  The Court granted preliminary approval of the Settlement Agreement on April 30, 2019.  (Doc. No. 90.)

The key terms of the proposed Settlement Agreement provide that Defendants will pay $250,000 (Doc. No. 95, 5) in exchange for a full release of claims from class members who do not opt out (Doc. No. 85-5, 28–29). After deducting $83,333.33 in attorneys' fees for Plaintiff's counsel, $15,000 in litigation costs, $10,000 in an incentive payment to Plaintiff, and $21,552 in settlement administration costs, the amount remaining for distribution to the class (the "Net Settlement Amount") is $120,114.67.  (Doc. No. 92, ¶

2

14.)  The Net Settlement Amount will be divided among participating class members based on the number of weeks that they worked during the class period.  (*Id.* at ¶ 15.)  On average, each participating class member will receive $54.85.[1]  (*Id.*)

## II.    LEGAL STANDARD

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  A court must engage in a two-step process to approve a proposed class action settlement.  First, the court must determine whether the proposed settlement deserves preliminary approval.   *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  Second, after notice is given to class members, the Court must determine whether final approval is warranted.  *Id.*  A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable."  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In the Ninth Circuit, courts must balance the following factors to determine whether a class action settlement is fair, adequate, and

---

[1] The parties state the average award will be $52.50, apparently using 2,288 as the number of participating class members.  (Doc. No. 92, ¶¶ 13–15.) Unless they intend to send checks to the 98 class members who the settlement administrator has failed to locate, however, the correct average is $54.85.  (*See id.*; *see also* n. 3, *infra*.)

United States District Court
Central District of California

United States District Court
Central District of California

reasonable: (1) the strength of the plaintiffs' case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) the reaction of the class members to the proposed settlement. *Torrisi*, 8 F.3d at 1375; *accord Hanlon*, 150 F.3d at 1026. "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458.

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). In addition, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, No. C-96-3008-DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).

## III.    DISCUSSION

### A.    Product of Serious, Informed, Non-Collusive Negotiations

As previously found by this Court, the parties engaged in arm's-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel. (Doc. No. 90, 9.) Additionally, the Settlement Agreement was reached after an all-day mediation with a neutral mediator, David Lowe. (*Id.*) The Settlement Agreement is therefore

4

United States District Court
Central District of California

presumptively the product of a non-collusive, arms-length negotiation, *see Roe v. SFBSC Management, LLC*, No. 14-cv-03616-LB, 2017 WL 4073809, at *9 (N.D. Cal. Sept. 14, 2017) (holding that a settlement that is the product of an arms-length negotiation "conducted by capable and experienced counsel" is presumed to be fair and reasonable); *Satchell v. Fed. Express Corp.*, No. 03-cv-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). This factor weighs in favor of approval.

### B. The Strength of the Plaintiff's Case and Future Risks[2]

In assessing the strength of the case, the Court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of [the] outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir.1982). As to risk, the Court may "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (citation omitted). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

---

[2] As the first three *Hanlon* factors—strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of future litigation; and the risk of maintaining class action status throughout the trial—are interrelated, the Court discusses them together here. *Hanlon*, 150 F.3d at 1026.

United States District Court
Central District of California

with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 525, 526 (C.D. Cal. 2004) (internal quotation marks omitted).

Although Plaintiff's moving papers provide little insight into the strengths and weaknesses of the class claims, Plaintiff states the parties have conducted enough research and discovery to evaluate their positions and conclude the Settlement Agreement is a fair, reasonable, and adequate result.  (Doc. No. 95, 7–8.)  At the very least, Defendants' continued contentions that they complied with California wage and hour law and that class certification is inappropriate (Doc. No. 88, 15–16) present Plaintiffs with the "substantial risk of incurring the expense of a trial without any recovery." *In re Toys R Us-Del., Inc.-Fair & Accurate Cred. Trans. Act (FACTA) Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014).  Moreover, before the Parties filed the present Motion, the Court had not yet certified a class in this case.  Where there is a risk that class certification might not be maintained before entry of final judgment, this factor favors approving the proposed settlement. *See, e.g.*, *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

### C.  The Amount Offered in Settlement

"To determine whether [a] settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated." *Millan v. Cascade Water Servs. Inc.*, 310 F.R.D. 593, 611 (E.D. Cal. 2015) (citing *Litty v. Merrill Lynch & Co., Inc.*, No. CV-14-0425-PA, 2015 WL 4698475, at *9 (C.D. Cal. April 27, 2015) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.

2000)).  A proposed settlement may be fair, adequate, and reasonable even though greater recovery might be available to the class members at trial. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir.1982).  Further, the Ninth Circuit has long deferred to the parties' private, consensual decisions.  *See Hanlon*, 150 F.3d at 1027.

Following discovery, Plaintiff estimated the class claims were worth up to $900,000.  (Doc. No. 91, 11.)  Although the proposed Gross Settlement Amount is just $250,000, the Court recognized in its preliminary order approving the Settlement Agreement that this amount falls within the range of reasonableness.  (Doc. No. 90, 11.)  This factor weighs in favor of approval.

**D.   The Extent of Discovery Completed and the Stage of the Proceedings**

This inquiry requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239.  Where the parties have conducted extensive discovery, this factor favors final approval "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (internal quotation marks omitted).

United States District Court
Central District of California

Here, the parties possess sufficient information to make an informed decision about the Settlement Agreement.  Prior to mediation, the parties undertook motion practice and both formal and informal discovery, including interviewing Plaintiff and other class members, conducting depositions, and reviewing documents produced by Defendants concerning employment records, payroll data, and operational policies and practices.  (Doc. No. 95, 7–8.)  This factor weighs in favor of approval.

### E.    The Experience and Views of Counsel

Since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation," courts tend to give considerable weight to counsel's opinion.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  Additionally, counsel are typically better positioned than the Court to produce a fair settlement, given the amount of investigation and research they have conducted. S*ee id.*  Here, counsel for both sides represent they have ample experience litigating class actions similar to this case.  (Doc. No. 88, 13.)  Considering their experience and their view that the Settlement Agreement "is fair, reasonable and adequate, given the inherent risk of litigation, the risk of appeals, the risks in an area where it is argued that the law is unsettled, and the costs of pursuing such litigation" (*id.*), the Court finds this factor weighs in favor of approval.

### F.    The Presence of a Governmental Participant

8

There is no governmental participant in this action. Thus, this factor is irrelevant for the purposes of final approval.

**G.    The Reaction of The Class Members to the Proposed Settlement**

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.

Following preliminary approval of the settlement by the Court, the settlement administrator mailed a notice of pending settlement and a data dispute form (together, the "Notice") to each of the 2,292 identified class members.  (Doc. No. 92, ¶¶ 3–7.)  The Notice explains in plain language what the case is about, what the recipient is entitled to, and the options available to the recipient in connection with this case, as well as the consequences of each option.  (*Id.*, Ex. A.)  During the allotted response period, the settlement administrator received zero objections and just four requests for exclusion from the settlement, resulting in a total of 2,190 class members—95.55% of the class—who will participate in the Settlement Agreement.[3]  (*Id.* at ¶¶ 11–13.)

---

[3] In the Declaration of Stephanie Molina In Support of Plaintiff's Motion for Final Approval of Class Settlement, settlement administrator Molina says there are 2,288 participating class members and a 99.83% participation rate, failing to exclude the 98 class members to whom Notice was undeliverable.  (*See* Doc. No. 92, ¶¶ 6–13.)  If one excludes those persons from both the numerator and denominator of the percentage calculation, 99.82% of *notified* class members will participate in the Settlement Agreement.  (*See id.*)

United States District Court
Central District of California

Given the low number of requests for exclusion and the absence of any objections to the terms or conditions of the Settlement, the Class response is favorable overall.  Accordingly, this factor also weighs in favor of approval.

### H.   Balancing the Factors

As all the relevant factors favor approval, the Court finds that the proposed Settlement Agreement is fair, reasonable, and adequate and GRANTS final approval of the Settlement Agreement.

### I.   Plaintiff's Motion for Attorneys' Fees

Notwithstanding an explicit agreement to shift attorneys' fees in a certified class action, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 941 (9th Cir. 2011).

Reasonable attorneys' fees are generally calculated by application of the lodestar method, which requires multiplying a reasonable hourly rate by the hours reasonably expended.  *See City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Ninth Circuit has held that "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–

United States District Court
Central District of California

United States District Court
Central District of California

96 (9th Cir.1994)).  Here, Plaintiff seeks to employ the percentage-of-the-fund method and requests $83,333.33, i.e., 33.33% of the Gross Settlement Amount, on behalf of Class Counsel.  (Doc. No. 91, 7.)

When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record."  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  A court may adjust the percentage upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; and (5) the awards made in similar cases.  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048–50).  The Court addresses these factors below.

### 1.  <u>Results Achieved</u>

After proposed attorneys' fees and other deductions, the Net Settlement Amount is $120,114.67, which translates to an estimated average award of $54.85 per participating class member.  (*See* Doc. No. 92, ¶ 10–15.)  Class Counsel curiously claims to have won "an average *gross* settlement payment of almost $85.56" (Doc. No. 91, 10 (emphasis added)) for class members.  As Class Counsel surely knows, however, the gross settlement amount is merely a starting point for computing what class members will actually receive, as more than half of the award will go to Class Counsel, litigation costs, the settlement administrator, and the named plaintiff under the proposed fee structure.  While mindful that Plaintiff's

United States District Court
Central District of California

prospects at trial were uncertain, upward departures from the benchmark typically require an "exceptional" result, *see Monterrubio*, 291 F.R.D. at 456. Recovery of $54.85 for each class member is not exceptional.

The Court finds that Class Counsel's performance does not justify such a departure.  In favor of its request for attorneys' fees equal to one-third of the gross settlement amount, Plaintiff notes that amount is 27.78% of Defendants' high-end exposure ($900,000).  (Doc. No. 91, 18.)  Without more—and Plaintiff does not describe anything out of the ordinary—a recovery in that range "simply do[es] not lead the Court to conclude that the result is 'exceptional,'" *see Monterrubio*, 291 F.R.D. at 456 (rejecting an application for attorneys' fees equal to 33.33% where recovery equaled 30% of the defendants' maximum liability exposure).

## 2. Risks of Litigation

Although Class Counsel did assume some degree of risk by representing Plaintiff, Class Counsel have not shown that this case carries the type of extreme risk that would merit a departure from the 25% benchmark.  *Compare Monterrubio*, 291 F.R.D. at 456–57 (finding case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections on a "knew or should have known" standard, and whether plaintiff could overcome an "exhaustion defense") and *Hawthorne v. Umpqua Bank*, No. CV 11-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding the risk in a case did not merit an attorneys' fees award of 33% even though the class counsel "expended a significant

United States District Court
Central District of California

amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis."), with *Vizcaino*, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was absence of supporting precedent).  Accordingly, this factor weighs against an attorneys' fees award above the 25% benchmark.

### 3.   Contingent Nature of the Fees

Class Counsel took this case on a contingent fee basis. The Ninth Circuit "has suggested the distinction between a contingency arrangement and a fixed fee arrangement alone does not merit an enhancement from the benchmark." *Richardson v. THD At-Home Servs., Inc.*, No. CV 14-0273-BAM, 2016 WL 1366952, at *9 (E.D. Cal. Apr. 6, 2016) (citing *In re Bluetooth*, 654 F.3d at 942 n.7); *see also Torrisi*, 8 F.3d at 1376 (noting that there were "no special circumstances . . . which indicate the 25% benchmark award is either too small or too large" even though class counsel took the case on "double contingency"). Accordingly, the Court will treat this factor as neutral.

### 4.   Skill and Quality of the Work

Class Counsel contend they have the rare skillset that allows practice in the "narrow area of wage-and-hour class action litigation," namely, experience in both wage-and-hour law and class action procedure.  (Doc. No. 91, 11).  While the Court does not doubt Class Counsel are experienced and skilled litigators, "this case is, quite simply, a garden-variety wage and hour class action," *see Monterrubio*, 291 F.R.D. at 457.  The legal issues

United States District Court
Central District of California

presented were neither complex nor novel; motion practice prior to settlement was within the ordinary course; and Counsel has litigated class actions with similar claims and issues, *see, e.g.*, *Hamilton v. Wal-Mart Stores, Inc.*, No. CV 17-01415-AB-KKx, 2019 WL 1949456 (C.D. Cal. Mar. 4, 2019). The Court will treat this factor as neutral.

### 5.    Awards Made in Similar Cases

As noted above, the Ninth Circuit has established a 25% benchmark award for attorneys' fees. *Hanlon*, 150 F.3d at 1029. Class Counsel cite several cases in which courts have awarded attorneys' fees at or above 33% of the total settlement fund. (Doc. No. 91, 13.) While some of these may be analogous to the present case, others are distinguishable. *See Stuart v. Radioshack Corp.*, No. CV 074499 EMC., 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (awarding 33.33% of the settlement as attorneys' fees in a $4,500,000 settlement, where the parties had "vigorous disputes over the course of the [three year] litigation").

Moreover, for every case involving an upward departure, there are several to show that courts generally adhere to the Ninth Circuit's benchmark when awarding fees in wage and hour class actions. *See Brooks v. Life Care Centers of Am., Inc.*, No. SACV-12-00659-CJC (RNBx), 2015 WL 13298569, at *4 (C.D. Cal. 2015) ("Awarding the benchmark in mine run of wage and hour cases appears to be standard in this District."); *see also Bravo v. Gale Triangle, Inc.*, No. CV-16-03347-BRO (GJSx), 2017 WL 708766, at *16 (C.D. Cal. Feb. 16, 2017) (rejecting an upward departure from the benchmark and noting that, "while some courts have found that an

United States District Court
Central District of California

upward adjustment is supported in wage and hour class action cases, other courts have not, or have found that such adjustments are supported only when the results are exceptional"); *Monterrubio*, 291 F.R.D. at 457-58 (rejecting the class counsel's request for a departure from the 25% benchmark in what the court deemed "a garden-variety wage and hour class action").  Class Counsel have not established that a departure is warranted here.  Accordingly, this factor weighs slightly against departing from the 25% benchmark.

### 6.   **Lodestar Cross-Check**

"Courts may apply the lodestar method as a 'cross-check'" on the reasonableness of a percentage-based fee award."  *Bravo*, 2017 WL 708766 at *17 (citing *Vizcaino*, 290 F.3d at 1050).  "[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."  *Vizcaino*, 290 F.3d at 1050.

The lodestar is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."  *Morales v. City of San Rafael*, 96 F.3d, 359, 363 (9th Cir. 1996).  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v.*

*Stenson*, 465 U.S. 886, 895 n.11 (1984)); *Roberts v. City and County of Honolulu*, 2019 DJDAR 8807–08 (9th Cir. 2019).  The "relevant community" for purposes of the "prevailing market rate" is the "forum in which the district court rests."  *Id.* at 979.

The Court has performed a limited review of Class Counsel's billing reports.  *See Schiller v. David's Bridal, Inc.*, No. CV-10-00616-AWI, 2012 WL 2117001, at *20 (E.D. Cal. June 11, 2012) ("Where the use of the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours.").  Class Counsel have provided affidavits stating they spent a total of 712.6 attorney hours on this case, yielding a lodestar total of $468,653.42 in fees.  (Doc. No. 91, 14.)

The hourly logs submitted in support of these fees contain multiple instances of excessive billing, particularly in time billed for correspondence and communication.  For instance, on some days, the lead partners' only time entries are for *receiving* an email, for which they billed as much as 0.3 hours, i.e., $201.55.  (*See, e.g.*, Doc. No. 91-3, Ex. 1; Doc. No. 91-2, Ex. A.) Mr. Hekmat also billed 0.5 hours, or $335.91, for reviewing the Court's standing order—something an experienced litigator should be able to do at little or no cost to his client.  (Doc. No. 91-3, Ex. 1.)

Even if Class Counsel were to update their lodestar figures to remove improper charges, "[t]he fact that the lodestar significantly outpaces an award based on the 25% benchmark" without more "is not a compelling

16

reason to depart from the Ninth Circuit's benchmark, particularly absent evidence of exceptional risk or difficulty."  *Brooks*, 2015 WL 13298569, at *5; *see also Ridge v. Infinity Sales Grp., LLC*, No. CV 12-6985-GW (SHx), 2014 WL 12589629, at *8 (C.D. Cal. July 24, 2014) (noting that, "[g]enerally speaking, this Court does not exceed the ... 25% benchmark" in "relatively simple and straightforward" cases unless "there is some indication that counsel performed exceptionally or in another unusual manner" and that "[t]his remains true even though Plaintiff's counsel indicates that the figure he seeks is itself already a negative multiplier when a lodestar cross-check is applied"); *Sandoval v. Tharaldson Employee Management, Inc.*, No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *9 (C.D. Cal. June 15, 2010) (rejecting a request to exceed the 25% benchmark because the plaintiff did not "present[ ] evidence of unusual circumstances that justify a departure from the Ninth Circuit's benchmark" aside from arguing that the lodestar exceeded the benchmark).

## 7.  <u>Conclusion</u>

The totality of the benchmark departure factors does not weigh in favor of an award above the 25% benchmark.  In addition, the Court declines to rely on Class Counsel's lodestar calculation figures for the reasons stated above.

The Court, therefore, finds that the facts of this case do not present the type of "unusual circumstances" required to justify a departure from the benchmark. *Graulty*, 866 F.2d at 272.  The Court DENIES Class Counsel's application for attorneys' fees equal to 33.33% of the settlement fund

($83,333.33) and APPROVES an attorneys' fees award of 25% of the settlement fund ($62,500.00).

### J.   Class Counsel Expenses

Plaintiffs seeks $15,000.00 in reimbursement for costs incurred by Class Counsel.  (Doc. No. 39-1, 24.)  After reviewing the accounting submitted by Class Counsel and information provided at the September 23, 2019 hearing, the Court finds that reimbursement of those expenses is reasonable and APPROVES the reimbursement of the amount sought.

### K.   Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59.  "The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"  *Staton*, 327 F.3d at 977. Courts may also consider: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation;

United States District Court
Central District of California

United States District Court
Central District of California

and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, Plaintiff requests that named plaintiff Aristedes Francisco receive an incentive payment of $10,000.00, noting that Mr. Francisco spent over 60 hours working on the case and that attaching his name to the lawsuit exposed him to reputational risks and the possibility of judgment against him for attorneys' fees. (Doc. No. 91, 17.)  In his own declaration, Mr. Francisco reiterates these points, emphasizing that because he has made himself available for depositions, meetings with counsel, and discussions with class members while the case was pending, he has not seen his wife and children in the Philippines in over a year.  (Doc. No. 91-4, ¶¶ 3–7.)

While Mr. Francisco completed work on behalf of the class and assumed some financial or reputational risk in bringing the action, the work and risk do not appear to be beyond the usual amount named plaintiffs assume in wage-and-hour class actions.  As the Court noted in its preliminary approval of the settlement, the Court must be cognizant of the interests of other class members, each of whom stands to receive about one-half of one percent of the proposed award.  *See* Fed. R. Civ. P. 23(e)(2)(D) (stating a court should consider whether a proposed settlement "treats class members equitably relative to each other.")

Accordingly, the Court does not find it reasonable to issue so large an incentive award.  The Court DENIES Class Counsel's request for an incentive award payment of $10,000.00.  Instead, the Court APPROVES an incentive award payment of $2,000.00 for the named plaintiff.

### L.   Settlement Administrator Costs

Plaintiff requests the Court approve the reasonable costs of administering the settlement, in an amount equal to $21,552. (Doc. No. 92, ¶ 14.)  The settlement administrator was charged with administering the settlement fund by, among other things, mailing the Notice to settlement class members; receiving and tracking claim forms; receiving and tracking opt outs and objections from nonparticipating class members; and distributing payments to all participating class members. (*Id.* at ¶¶ 3–14.) The Court finds the settlement administrator expenses reasonable and APPROVES the reimbursement.

# IV.   CONCLUSION

For the reasons stated above, the Court GRANTS the Motion for Final Approval of Class Settlement.

The Court GRANTS IN PART and DENIES IN PART the Motion for Approval of Award of Attorneys' Fees and Costs and Class Representative Enhancement.  Class Counsel's request for attorneys' fees in the amount of $83,333.33 is DENIED.  Instead, the Court APPROVES attorneys' fees for Class Counsel of no more than $62,500.00.  Likewise, Class Counsel's request for a $10,000.00 incentive payment to the named plaintiff is

DENIED.  Instead, the Court APPROVES an incentive payment of

$2,000.00 to the named plaintiff.  The Court APPROVES Plaintiff's request

for settlement administration costs.


        All other cost reimbursements are APPROVED as set forth above.


        **IT IS SO ORDERED.**


    Dated:    9/24/19

                                                    Virginia A. Phillips
                                        Chief United States District Judge